## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHARELLES JONES-HARRIS, #338-979 | * | |
| Plaintiff | * | |
| v | * | Civil Action No. ELH-15-354 |
| WARDEN JOHN WOLFE | * | |
| OFFICER NUDUKWE ONUMA[1] | | |
| | * | |
| Defendants | | |
| | *** | |

## MEMORANDUM

In February 2015, plaintiff Charelles Jones-Harris, a self-represented inmate within the Maryland Division of Correction ("DOC"), filed a civil rights action pursuant to 42 U.S.C. § 1983, seeking money damages from Correctional Officer Ndukwe Onuma as a result of an incident that occurred on August 7, 2013, while plaintiff was an inmate at Jessup Correctional Institution ("JCI").[2] On that date, Jones-Harris suffered serious injuries when he was brutally attacked by several fellow prisoners. He alleges that Onuma was absent from the tier when the attack occurred. ECF 1 at 4.[3]

Defendant has filed an unopposed "Motion To Dismiss Or, In The Alternative, A Motion

---

[1] The Clerk shall amend the docket to reflect the full and complete spelling of Onuma's name.

[2] Jones-Harris initially sued JCI Warden John Wolfe, but provided no allegations against him. By Order dated February 26, 2015, I dismissed Wolfe from the case. ECF 5. Plaintiff had already added Onuma as a defendant in a supplement filed on February 23, 2015. ECF 4.

[3] As noted in the Order of February 26, 2015, the Court has no authority to grant Jones-Harris's request (ECF 4 at 3) for criminal prosecution of defendant and the three prisoners who stabbed him. See ECF 5 at 1, n. 2 (citing Linda R. S. v. Richard D., 410 U.S. 614, 619 (1973)).

For Summary Judgment.   ECF 10.   It is supported by a legal memorandum (ECF 10-1) (collectively, the "Motion") and numerous exhibits that consist of hundreds of pages.[4] According to defendant, plaintiff "describes nothing more or less than a spontaneous attack upon him."  ECF 10-1 at 11.

Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), on April 13, 2015, the Clerk notified Jones-Harris that defendant had filed a dispositive motion; that Jones-Harris had seventeen days in which to file a written opposition to the motion; and that if Jones-Harris failed to respond, the claim against defendant could be dismissed, without further notice.  ECF 11.  Jones-Harris requested and received additional time to file an opposition.  ECF 12; ECF 13.  However, he has not responded.

No hearing is needed to resolve the Motion.  *See* Local Rule 105.6.  For the reasons set forth below, I shall grant the Motion.

## I.   Standard of Review

Defendant's Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).  Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a

---

[4] To illustrate, the Exhibit at ECF 10-5 consists of 118 pages; ECF 10-6 exceeds 125 pages; and ECF 10-8 is 75 pages in length.

reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

When the movant expressly captions its motion "in the alternative," as one to dismiss for for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that  conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[5]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165, 167.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont*, *supra*, 637 F.3d at 448-49. However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds

---

[5] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f))   "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for

4

summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

Jones-Harris has not filed an affidavit under Rule 56(d). Nor has Jones-Harris suggested that additional discovery is needed.

I am satisfied that, given the voluminous exhibits presented here, the Court has ample information with which to address the Motion as one for summary judgment. Moreover, doing so will facilitate resolution of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). In analyzing a summary judgment motion, the court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see*

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). But, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black &. Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45.

In the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Because Jones-Harris is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## II. Discussion

### A.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

Plaintiff alleges that defendant was deliberately indifferent in failing to provide adequate supervision and security to protect him and, as such, his right to be free from cruel and unusual punishment has been violated. A prisoner's right to be free from cruel and unusual punishment includes the right to be protected from a substantial risk of serious harm at the hands of other inmates. *See Farmer v. Brennan,* 511 U.S. 825 (1994); *Makdessi v. Fields*, 789 F.3d 126, 132 (4th Cir. 2015); *Danser v. Stansberry*, 772 F.3d 340, 346 (4th Cir. 2014); *Winfield v. Bass*, 106 F.3d 525, 531 (4th Cir. 1997).

In *Farmer v. Brennan*, 511 U.S. 825, the Supreme Court said, *id.* at 833 (internal quotations and citations omitted; alterations in *Farmer*).

[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners. Having incarcerated persons [with] demonstrated

7

proclivity[ies] for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course. Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective[e], any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

In *Danser*, the Fourth Circuit explained, 772 F.3d at 346:

> This constitutional right derives from the Supreme Court's holdings that the treatment an inmate receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. [*Farmer*, 511 U.S.] at 832-33. Because being assaulted in prison is not "'part of the penalty that criminal offenders pay for their offenses against society,'" *id*. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)), prison officials are responsible for "protect[ing] prisoners from violence at the hands of other prisoners." *Id* at 833 (citations and internal quotation marks omitted).

Further, as to an inmate's right to be protected from prisoner violence, the *Danser* Court said, *id.* at 346-47:

> An Eighth Amendment claim of this nature requires proof of two elements to establish deprivation of a constitutional right. [*Farmer*, 511 U.S.] at 834; *Brown v. N.C. Dep't of Corr*., 612 F.3d 720, 723 (4th Cir. 2010). First, a prisoner must establish a serious deprivation of his rights in the form of a "serious or significant physical or emotional injury."[ ] *Brown*, 612 F.3d at 723; *see also De'Lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013). . . . The second element … requires that a plaintiff show that the prison official allegedly violating the plaintiff's constitutional rights had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (citation and internal quotation marks omitted). In this context, the required state of mind that must be established is a "deliberate indifference to inmate health or safety." *Id*. (citations omitted).

In sum, in a failure to protect claim under the Eighth Amendment, a prisoner must show, first, that the harm he suffered was objectively serious, and second, that prison officials acted with deliberate indifference. *Farmer*, 511 U.S. at 834.

In particular, to prevail on an Eighth Amendment claim of failure to protect from violence, a plaintiff must establish that the defendant exhibited deliberate or callous indifference

to a specific known risk of harm. *See Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987). In other words, a prison "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see Rich v. Bruce*, 129 F. 3d 336, 339-40 (4th Cir. 1997). However, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk, no matter how obvious." *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995); *see Makdessi v. Fields*, 789 F.3d 126 (4th Cir. 2015). And, "[a] prison official's subjective actual knowledge [of a risk] can be proven through circumstantial evidence. . . ." *Makdessi*, 789 F.3d at 133.

Here, plaintiff's injuries qualify as "significant" under the first element of the *Farmer* test. It is the second element that forms the core issue. As to that element, there is simply no indication in the record that the defendant knew or should have known, from plaintiff or anyone else, that plaintiff was in danger of assault by other inmates. And, even if defendant was somehow negligent, demonstration of negligence does not suffice to show a claim of deliberate indifference. *See Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).

**B.**

It is undisputed that on August 7, 2013, Jones-Harris was a JCI general population prisoner whose movements were not restricted, enabling him to go to the shower area and the commissary area without being accompanied by corrections staff. ECF 10-3, Decl. of Allen Gang, Chief of Security, at ¶ 4; ECF 10-4, Decl. of Ndukwe Onuma, at ¶ 5.[6] At approximately 1:10 p.m. on that date, Jones-Harris was stabbed multiple times by fellow prisoners Julius

---

[6] This Memorandum cites to the pagination assigned through the Court's electronic docketing system, which does not necessarily correspond to page numbers on pleadings or exhibits.

Collins, Roy Harris, and Tanoa Shorter.  Jones-Harris was hospitalized following the attack, and the Internal Investigation Unit ("IIU") convened an investigation.  ECF 10-6 (IIU Report, Redacted), at 4.

On August 7, 2013, Onuma was assigned to C-Tier and was monitoring 196 prisoners in a 30-by-10 foot area.  ECF 10-3 at ¶ 3, Gang Decl.; ECF 10-4 at ¶¶ 3-4, Onuma Decl.  Onuma was also assigned to complete other tasks, including monitoring recreation and mass movement on the tier.  *Id.*  At approximately 1:10 p.m. Onuma, who at the time did not know that Jones-Harris had been threatened by Collins, saw several prisoners fighting at the top of the tier.  ECF 10-4 at ¶¶ 6-7.  Onuma immediately observed prison protocol by calling a "10-10" code for assistance and staying on the scene to observe until assistance arrived to end the attack.  ECF 10-3 at ¶ 5; ECF 10-4 at ¶ 7; *see also* ECF 10-6, IIU Report (Redacted).

Onuma observed inmates Collins, Harris, and Shorter stab plaintiff.  ECF 10-4 at ¶ 8; ECF 10-6 at 5.  CO II Emeka Okafor and CO II Mustapha also witnessed the assault.  ECF 10-6 at 4, 5.  The inmates were ordered to stop fighting, they were subjected to pepper spray, and handcuffed.  ECF 10-5, Use of Force Report at 8, 12, 14.   Officer Desmond Ross subsequently recovered a homemade knife from the trash.  ECF 10-5 at 19, 26, 62-63, 84.

As of August 7, 2013, plaintiff had not identified the assailants as his enemies.  ECF 10-3 at ¶ 7; ECF 10-7 (enemy list).  The assailants were added to plaintiff's enemy list on September 17, 2013.  *Id.*

As a result of the attack, plaintiff was hospitalized for several days.  ECF 10-8, Medical Records.  He sustained multiple puncture wounds, bleeding, and swelling.  *See*, *e.g.*, ECF 10-8 at 2.  He was also diagnosed with a collapsed lung, among other injuries.  *Id.* at 67-70; ECF 10-6 at 5.

Onuma avers that he did not have advance knowledge from Jones-Harris or anyone else that Jones-Harris was in danger of assault by Collins or any other prisoner; that none of Jones-Harris's attackers were verified as his enemies in prison records; and that Onuma played no role in the assault.  ECF 10-4 at ¶¶ 10-12.  As noted, ECF 10-7 reflects that plaintiff had no enemy alert at the relevant time.

Plaintiff was interviewed soon after the attack, while hospitalized at the University of Maryland Shock Trauma Unit.  There, according to the IIU Report, Jones-Harris related to Sgt. Nwanja that "the incident occurred over a misunderstanding [with Collins] regarding commissary."  ECF 10-6 at 5.  He also indicated that he did not want to press charges against anyone, and signed a Complaint Withdrawal form.  ECF 10-6 at 5, 17.  And, on August 7, 2013, while in Shock Trauma and sedated, plaintiff told Lieutenant Kimberly Forte that he got into an argument with Collins about a "Commissary List," and they both went to "the top shower to fight," where they thought they would be out of sight of the camera.  ECF 10-5 at 23.

A thorough Use of Force Investigation was conducted at JCI.  ECF 10-5.  In addition, the Internal Investigation Unit promptly initiated a comprehensive investigation.  *See* ECF 10-6.  After the IIU investigation, Allen Gang, Chief of Security, found Onuma's actions to be reasonable and necessary.  ECF 10-3 at ¶ 8.

In his Complaint, Jones-Harris implies that the attack was a "hate crime" because he is a "homosexual."  ECF 1 at 4.

### C.

 Defendant asserts entitlement to qualified immunity, arguing that his conduct did not violate any clearly established constitutional right of which a reasonable public official should have known.  *See Harlow v. Fitzgerald,* 457 U.S. 800 (1982); *see also Iko v. Shreve*,

535 F.3d 225, 238 (4th Cir. 2008) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).   It is true that the court cannot require prison officials to possess "the legal knowledge culled 'by the collective hindsight of skilled lawyers and learned judges,' but instead only 'the legal knowledge of an objectively reasonable official in similar circumstances at the time of the challenged conduct.'"   *Johnson v. Caudill*, 475 F.3d 645, 650 (4th Cir. 2007) (quoting *Jackson v. Long*, 102 F.3d 722, 731 (4th Cir. 1996)).   The Eighth Amendment claim raised here, however, was clearly established by 2013, when the attack occurred.   Thus, defendant cannot claim qualified immunity.

Defendant also contends that he is immune from suit for any claims brought against  him in his official capacity.   The Eleventh Amendment bars suit in federal court, absent consent, against a state by its own citizens. *See Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356 (2001).   Under the Eleventh Amendment to the United States Constitution, a state, or one of its agencies or departments, is immune from suit in federal court brought by its citizens or the citizens of another state, unless it consents. *See Penhurst State School and Hospital v Halderman*, 465 U.S. 89, 100 (1984). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code, State Gov't. Art., §§ 12–201(a), 12-202, it has not waived its immunity under the Eleventh Amendment to suit in federal court.

Jones-Harris's request for monetary damages against Onuma in his official capacity for constitutional violations is barred by Eleventh Amendment immunity. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *see Brandon v. Holt*, 469 U.S. 464, 471-

71 (1985). States and their officers, sued in their official capacities, are not "persons" subject to suit for money damages under Section 1983. *Will*, 491 U.S. at 71.

To be sure, there are several exceptions to the Eleventh Amendment bar. *See, e.g., Equity In Athletics, Inc. v. Department of Education*, 639 F.3d 91, 107 n. 13 (4th Cir. 2011) (listing exceptions). Relevant here, the Eleventh Amendment does not prevent private individuals from bringing suit against State officials for prospective or declaratory relief for ongoing violations of federal law. The record, however, does not support Jones-Harris' claims of violations of constitutional law, for reasons discussed herein.

Defendant also asserts that Jones-Harris's claim should be dismissed due to his failure to exhaust available administrative remedies. The Prisoner Litigation Reform Act provides, in pertinent part:

> (a) Applicability of administrative remedies
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement

and does not impose a heightened pleading requirement on the prisoner.  Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants.  *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process.  *Chase v. Peay*, 286 F. Supp. 2d 523, 530 (D. Md. 2003), *aff'd*, 98 Fed. App'x 253 (4th Cir. 2004); *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Administrative remedies must, however, be available to the prisoner in order for a defendant to rely on exhaustion as a defense, and this court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). The Fourth Circuit has addressed the meaning of "available" remedies in *Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008):

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See*

> *Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id*. at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*See also Blake v. Ross*, 987 F.3d 693 (4th Cir. 2015).

In Maryland, the Commissioner of Correction "may adopt regulations for the operation and maintenance of the units in the Division," which, among other things, "shall provide for the discipline and conduct of inmates, including the character of punishments for violations of discipline." Md. Code (2008 Repl. Vol., 2015 Supp.), Correctional Services Article ("C.S."), §3-205; *see also* Code of Maryland Regulations ("COMAR") 12.02.2701.

In addition, the Maryland Department of Public Safety and Correctional Services ("DPSCS") has made an "administrative remedy procedure" ("ARP") available to Maryland State prisoners, within the meaning of 42 U.S.C. § 1997e(a), for the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction." C.S. § 10-206(a); *see generally* C.S. §§ 10-201 *et seq*.; COMAR 12.07.01.01(B)(1) (defining ARP).   Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance' to include a "complaint of any individual in the custody of the [DOC] . . . against any officials or employees of the [DOC] . . . arising from the circumstances of custody or confinement." COMAR 12.07.01.01B(8).[7]

---

[7] Maryland appellate case law indicates that the administrative grievance procedure does not encompass "'every kind of civil matter that could be brought by a DOC inmate.'" *Massey v. Galley*, 392 Md. 634, 646, 898 A.2d 951, 958 (2006) (citation omitted). Rather, it applies only to matters that "relate to or involve a prisoner's 'conditions of confinement.'" *Id*. at 651, 898

An inmate "must exhaust" the ARP process as a condition precedent to further review of the inmate's grievance. *See* C.S. § 10-206(b); *see also* COMAR 12.07.01.02.D; DCD 185-002 (effective August 27, 2008).  Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006).

In Maryland, filing a request for administrative remedy with the warden of the prison is the first of three steps in the ARP process. *See* COMAR 12.07.01.04.  The ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.07.01.05A.  If the request is denied, a prisoner has 30 calendar days to file an appeal with the Commissioner of Correction.  COMAR 12.07.01.05C; *Blake v. Ross*, 787 F.3d at 697.  If the appeal is denied, the prisoner has 30 days to file a grievance with the Inmate Grievance Office ("IGO").  *See* C.S. §§ 10-206, 10-210; COMAR 12 07.01.03; COMAR 12.07.01.05B.

Complaints are reviewed preliminarily by the IGO.  *See* C.S. § 10-207; COMAR

---

A.2d at 960 (citation omitted).  Thus, the grievance procedure does not apply to requests for public information under the Maryland Public Information Act, *see id.*, nor does it apply to medical malpractice claims against private medical service providers who treat inmates under contract with the DOC.  *See Abramson v. Correctional Med. Servs., Inc.*, 359 Md. 238, 753 A.2d 501 (2000).

Moreover, the administrative grievance procedure does not apply to claims for compensation for disabilities resulting from "personal injury arising out of and in the course of [an inmate's] work for which wages or a stipulated sum of money was paid by a correctional facility," C.S. § 10-304, for which a claim to a different administrative body, the Sundry Claims Board, is the exclusive remedy.  *See Dixon v. DPSCS*, 175 Md. App. 384, 927 A.2d 445 (2007).  On the other hand, the grievance process does apply to a wide variety of claims that arise out of the conditions of confinement, even if the grievance process cannot provide a comprehensive remedy for such claims, such as tort claims of assault and battery against prison officers.  *See McCullough v. Wittner*, 314 Md. 602, 552 A.2d 881 (1989).

12.07.01.06A. If the complaint is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B. The order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.J. § 10-208(c); COMAR 12.07.01.07-.08. The conduct of such hearings is governed by statute. C.S. § 10-208.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. However, a decision concluding that the inmate's complaint is wholly or partly meritorious constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* C.S. § 10-209(b)-(c).

The final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his/her remedies. *See* C.S. § 10-210. But, an inmate need not seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement. *See*, *e.g.*, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.) ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court."), *cert. denied*, 537 U.S. 949 (2002).[8]

In sum, in order to show administrative exhaustion, a plaintiff must follow all the steps in the administrative process. If an inmate is not satisfied with the action of the IGO in response to

---

[8] Defendant asserts that, when an inmate files suit directly in federal court, such an action is not an appeal of an adverse decision of the IGO to the State's circuit court. He cites Md. Code, Cts. & Jud. Proc. Art. § 5-1003(a)(3) ("Judicial review following administrative consideration shall be the exclusive judicial remedy for any grievance or complaint within the scope of the administrative process . . . .").

his complaint, the Maryland General Assembly has provided for judicial review through an appeal to the circuit court for the county in which the institution is located.

Defendant asserts, ECF 10-1 at 15:

> Plaintiff has not properly exhausted his administrative remedies. The only ARP Plaintiff filed relating to the August 7, 2013, assault did not contain allegations that Defendant Onuma failed to protect Plaintiff. [*See* ECF 10-10]. Instead, the ARP dealt with allegations of roaches and mice keeping him up at night, as well as, allegations that two of the inmates that previously assaulted Plaintiff were now housed on the same tier as Plaintiff and had threatened to throw human feces at Plaintiff. *Id.* In addition, Plaintiff withdrew this ARP. *Id.* at p. 3. Furthermore, Plaintiff has failed to file any grievances with the IGO. [ECF 10-11, Declaration of Scott Oakly, Executive Director, Inmate Grievance Office.

Plaintiff filed an ARP in August 2013. ECF 10-10 at 2-3. But, he withdrew his ARP request on August 28, 2013. ECF 10-10 at 1. Nevertheless, in the context of the case, defendant's assertion that Jones-Harris failed to exhaust administrative remedies may lack merit.

As the Fourth Circuit recently stated, "the exhaustion requirement is not absolute." *Blake v. Ross*, 787 F.3d at 697. Indeed, there are instances when non-exhaustion is "justified." *Id.* at 698 (citation omitted). Here, the comprehensive IIU investigation may satisfy the substantive component for an exception to exhaustion. *Blake*, 787 F.3d at 698. And, plaintiff may have reasonably believed that the IIU investigation "*procedurally* exhausted his available remedies. . . ." *Id.*; *see also Bogues v. McAlpine, et al.*, Civil Action No. CCB-11-463 (D. Md.), ECF 23, Exhibit 4 at 23; *Oliver v. Harbough, et al.,* Civil Action No. ELH-11-996 (D. Md.), Memorandum of December 19, 2011, ECF 31 at 7-8.

Accordingly, I shall assume, *arguendo*, that plaintiff exhausted his claim. Therefore, I will examine the claim on the merits.

The gravity of plaintiff's injuries is not disputed. Thus, plaintiff has established the first prong of a failure-to-protect claim. His claim fails, however, because he cannot demonstrate the

second prong in the Eighth Amendment analysis, *i.e.*, that Onuma acted with deliberate or callous indifference by ignoring his assigned duties and allowing a specific known risk of harm to occur.

It is uncontroverted that Onuma did not know that Jones-Harris and Collins had had an argument.  Plaintiff does not allege, nor do the records show, that plaintiff alerted defendant or anyone else at the prison that he was in fear for his safety.  The assailants were not listed as plaintiff's enemies as of August 7, 2013.  Moreover, Onuma had multiple duties on the tier that demanded his attention.  And, when the fight erupted, Onuma quickly summoned additional officers to help quell the prisoner melee.  Nothing more is constitutionally required.

A finding of failure to protect in violation of the Eighth Amendment cannot be made on the facts of this case.  Summary judgment will be entered in favor of defendant in a separate Order to follow.


December 2, 2015                           _____/s/_____
Date                                       Ellen L. Hollander
                                           United States District Judge

19